UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFF BROWN, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF CHICAGO,<br><br>        Defendant. | 19 C 2411<br><br>Judge Charles P. Kocoras |

## ORDER

Before the Court is Defendant City of Chicago's ("the City") motion to dismiss Plaintiff Jeff Brown's ("Brown") class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the City's motion.

## STATEMENT

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Brown's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Brown, a Michigan resident, is the registered owner of a certain motor vehicle registered in Michigan and bearing Michigan License No. DXY6363. Currently, Michigan and eighteen other states do not require the display of a front license plate on a vehicle that is validly registered pursuant to that state's law, as was Brown's vehicle.

However, on March 29, 2019, Brown's vehicle was parked near the 1200 block of South Plymouth Court in Chicago, Illinois. That morning, an agent of the City issued a "Violation Notice" for Brown's vehicle, stating the vehicle violated "Code: 0976160A"[1] for "missing front plate."

Brown maintains that this is not an isolated occurrence, as "all nineteen states that do not require the display of a front license plate on a vehicle that is validly registered pursuant to that state's law have been issued violation notices by [the City] for failure to display a front license plate." 1:19-cv-2411, Dkt. 1, pg. 3. Further, the City "issues over three million parking citations per year," bringing in "nearly $264 million to [the City] in 2016, or about 7 percent of Chicago's $3.6 billion operating budget."

Based on these events, Brown filed a class action complaint on April 9, 2019, alleging violations of 42 U.S.C. § 1983 (Count I); the Full Faith and Credit Clause of the United States Constitution, Art. IV, Sec. 1 (Count II); the Privileges and Immunities Clause of the United States Constitution, Art. IV, Sec. 2 (Count III); *Quo Warranto* (Count IV); and the Illinois Consumer Fraud and Deceptive Business Practices Act

---

[1] Chicago Municipal Code Section 9-76-160 states that "(a) Every vehicle in the City subject to the registration plates requirements of the Illinois Vehicle Code shall bear registration plates in the manner required by that Code. It is illegal to park a vehicle on any roadway if the registration plate or other registration material fails to comply with this subsection." The Illinois Vehicle Code provides that "Registration plates … issued for a motor vehicle other than a motorcycle, autocycle, trailer, semitrailer, truck-tractor, apportioned bus, or apportioned truck shall be attached thereto, one in the front and one in the rear." 625 ILCS 5/3-413. However, the Illinois Vehicle Code defines "Registration" to include only those plates issued under the laws of Illinois. 625 ILCS 5/1-171.

("ICFA"), 815 ILCS 505/1, *et seq.* (Count V). On May 31, 2019, the City filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

The City urges the Court to dismiss Brown's complaint for four main reasons: (1) the Full Faith and Credit Clause, which is the basis of Counts I and II, has no private right of action; (2) Count III does not impact a fundamental right, state a protectionist purpose, treat out-of-state citizens less favorably, or allege an official policy; (3) the

Court does not have jurisdiction under federal common law or Illinois law over Brown's in *quo warranto* claim in Count IV; and (4) the IFCA, the basis of Count V, does not apply to the City. The Court addresses each argument in turn.

**I. Full Faith and Credit Clause**

The City asserts that the Court should dismiss Counts I and II because there is no private right of action under the Full Faith and Credit Clause. Brown concedes that Count II is not viable for that reason, so he voluntarily withdraws that count. However, he maintains that he may bring a Full Faith and Credit Clause claim under Section 1983, as he purports to do in Count I. The Court disagrees with Brown.

The Supreme Court has held that the Full Faith and Credit Clause "only prescribes a rule by which courts … are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records, and judicial proceedings of [another state]." *State of Minnesota v. N. Sec. Co.*, 194 U.S. 48, 72 (1904). The clause "has nothing to do with the conduct of individuals or corporations." *Id.* As such, "the Full Faith and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action." *Thompson v. Thompson*, 484 U.S. 174, 182 (1988). Extending this rationale to Section 1983 suits, courts have held that the Full Faith and Credit Clause does not give rise "to a right vindicable in a § 1983 action." *Adar v. Smith*, 639 F.3d 146, 153 (5th Cir. 2011) (rejecting argument that "plaintiffs may employ § 1983 against any state actor who violates one's 'right' to full faith and credit"). Rather, the clause only

determines the preclusive effect of final adjudications in other courts, so "Section 1983 has no place in the clause's orchestration of inter-court comity." *Id.* at 151.

Given that Section 1983 does not give rise to a private right of action under the Full Faith and Credit Clause, the Court dismisses Count I with prejudice.

## II. Privileges and Immunities Clause

At the outset, Brown asserts a violation of the Privileges and Immunities Clause of the United States Constitution in Count III. The City generously regards this count as a Section 1983 claim, but Brown does not assert that Count III is brought pursuant to that statute in his complaint or in his responsive pleading. Moreover, Brown responds to the City's Section 1983 challenges as they relate to Count I but not as they pertain to Count III, and he provides no indication of an alternative legal standard for this Court to apply.

The constitutional challenge Brown alleges is properly brought as a claim under Section 1983, which "provides a cause of action against municipalities and municipal employees acting in their official capacities, and the availability of this statutory remedy precludes direct claims under the Constitution." *Flores v. City of Chicago*, 682 F. Supp. 950, 953 (N.D. Ill. 1988); *see also Strauss v. City of Chicago*, 614 F. Supp. 9, 10 (N.D. Ill. 1984) ("Congress intended § 1983 to be the exclusive federal remedy for the unconstitutional actions of city officials."). As such, the Court will evaluate this claim under the Section 1983 standard.

5

"A municipality cannot be held liable under § 1983 for constitutional violations committed by its employees on a theory of *respondeat superior*." *Acheampong v. City of Chicago*, 128 F. Supp. 2d 560, 562 (N.D. Ill. 2001) (citing *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 509 (7th Cir. 1993)). Therefore, to state a Section 1983 claim against a municipality, "the plaintiff must allege that (1) he or she has suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom or usage of the municipality." *Id*. The City urges the Court to dismiss Count III because Brown has not alleged either element. The Court will address each portion in turn.

### A. Deprivation of a Constitutionally Protected Interest

The Privileges and Immunities Clause guarantees "a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell,* 334 U.S. 385, 395 (1948). However, the Constitution "does not require that a State tailor its every action to avoid any incidental effect" on out-of-state residents. *McBurney v. Young*, 569 U.S. 221, 229 (2013). As a result, this protection only extends to those privileges and immunities with "bearing upon the vitality of the Nation as a single entity." *Culp v. Raoul*, 921 F.3d 646, 656 (7th Cir. 2019) (quoting *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 279 (1985)); *see also Lebamoff Enter., Inc. v. Rauner*, 909 F.3d 847, 857 (7th Cir. 2018) (stating that the Privileges and Immunities Clause "protects those privileges and immunities that are 'fundamental'").

6

Although the Supreme Court has recognized that "the constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so," *United States v. Guest*, 383 U.S. 745, 757 (1966), courts have considered parking distinct from the fundamental right to travel. *See Peruta v. City of Hartford*, 2012 WL 3656366, *7 (D. Conn. 2012). Indeed, "[c]ourts have typically considered parking to be a privilege and not a fundamental right in its own respect." *Id.* (collecting cases). Given the City's authority to regulate parking within its limits and the ordinance's limited application to a motorist's right to park on a public street in Chicago, there is no fundamental right at issue. Absent a fundamental right at stake, there can be no violation of the Privileges and Immunities Clause.

### B. Official Policy, Custom, or Usage of the City

Given that there is no underlying deprivation of a constitutionally protected interest under the Privileged and Immunities clause alleged in the complaint, the Court need not address whether the City's official policy, custom, or usage caused such a deprivation. Accordingly, Count III is dismissed with prejudice.

### III. *Quo Warranto*

In Count IV, Brown brings a claim in *quo warranto*, alleging the City exercised powers beyond those authorized by statute when citing nonresidents' vehicles. Yet, the complaint does not state whether this claim is pursuant to federal common law or Illinois state law. As detailed below, the claim fails under either theory.

**A. Federal Law**

A federal action in *quo warranto* is an extraordinarily limited remedy under federal common law which "is only employed to test the actual right to an office or franchise, [so] it follows that it can afford no relief for official misconduct and cannot be employed to test the legality of the official action of public or corporate officers." *U.S. ex rel. State of Wis. v. First Fed. Sav. and Loan Ass'n*, 248 F.2d 804, 808 (7th Cir. 1957).

Federal courts have no general *quo warranto* jurisdiction. *Barany v. Buller*, 670 F.2d 726, 735 (7th Cir. 1982). Congress granted federal courts jurisdiction to hear *quo warranto* claims but it was "strictly limited and is confined solely to situations involving franchises and public offices held within the District of Columbia. There is no other specific statutory provision vesting original jurisdiction in the district courts in quo warranto actions." *U.S. ex rel. State of Wis.*, 248 F.2d at 808.

Brown counters that Section 1651 allows courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," including a writ of *quo warranto*. 28 U.S.C. § 1651. Even assuming this theory is sound, Brown cannot establish jurisdiction under this provision because he cannot show that "he lacks an adequate alternative remedy," as required by Section 1651. *McCaskill v. United States*, 2017 WL 3720459, at *1 (E.D. Mich. 2017) (citing *Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989)). Because

Brown could have contested his ticket and appealed any outcome to the state courts, he cannot meet this requirement or use Section 1651 as his jurisdictional basis.

Given that there is no precedent or statutory provision to confer authority upon this Court to adjudicate a claim in *quo warranto*, this claim has no federal footing and must be dismissed with prejudice.

### B. Illinois Law

While it remains an extraordinary remedy, under Illinois law:

> A private party may bring an action in *quo warranto* when the party: (1) can demonstrate that the Attorney General and State's Attorney, have been asked to bring the proceeding, and have refused to bring the proceeding; (2) can show that it has a personal interest distinct from the interest of the general public; and (3) has been granted leave by a court to file the action.

*People ex rel. Broadview, Ill. v. Vill. of N. Riverside, Ill.*, 2006 WL 1156549, at *2 (N.D. Ill. 2006). Brown fails to meet any of these statutory thresholds. Brown does not allege that he requested the Attorney General and the State's Attorney to bring the proceeding, that they refused, or that he requested and received leave from the state circuit court to proceed. Indeed, he claims to be exempt from these requirements, but this assertion is unavailing because it is unsupported by precedent. Given that Brown did not satisfy the statutory prerequisites, Count IV is dismissed with prejudice.

## IV. ICFA

Finally, the City contends that a municipality is not a person under the ICFA and is, therefore, not subject to suit. 815 ILCS 505/1(c). The Court agrees.

9

The Illinois Supreme Court held that municipalities are unable to bring suit under the ICFA because a body politic is not included in the definition of the terms "person" or "corporation" as they are used within the statute. *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 468–69 (1989). In keeping with this decision, the Illinois Appellate Court held that a "municipal corporation[] does not fall within the definition of 'person' in the Act and is therefore not subject to suit under the Act." *Du Page Aviation Corp. v. Du Page Airport Auth.*, 594 N.E.2d 1334, 1342 (Ill. App. 2d Dist. 1992). As a result, the City is not able to sue or be sued under the ICFA. Accordingly, Count V is dismissed with prejudice.

## CONCLUSION

For the aforementioned reasons, the Court grants the City's motion to dismiss with prejudice. It is so ordered.

Dated: 1/30/2020

_____

Charles P. Kocoras
United States District Judge